U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP 1 2 2007

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DEJUAN ANDRE BOULDS,              §
                                  §
          Plaintiff,              §
                                  §
VS.                               §  NO. 4:06-CV-422-A
                                  §
PRISCELLA MILES, ET AL.,          §
                                  §
          Defendants.             §

MEMORANDUM OPINION
and
ORDER

On August 1, 2007, defendants, Judith Brooks ("Brooks"),
Bobby Thompson ("Thompson"), Priscella Miles ("Miles"), Bryan
Powell ("Powell"), Roy Collins ("Collins"), Leonard Harrelson
("Harrelson"), Rickey Denney ("Denney"), Roger Treat ("Treat"),
and Jerry Beck ("Beck"), filed a motion for summary judgment in
this suit.  Plaintiff, DeJuan Andre Boulds, did not file a
response.  Having considered the defendants' motion, the summary
judgment evidence, and the applicable legal authorities, the
court concludes that the defendants' motion for summary judgment
should be granted.

I.

Plaintiff's Claims

On June 15, 2006, plaintiff filed a complaint under 42
U.S.C. § 1983, alleging several prison officials at the
Bridgeport Correctional Center ("BCC") violated his Eighth
Amendment rights.  Plaintiff alleges that while he was
incarcerated at the BCC during 2004, 2005, and 2006, he was

subjected to extremely cold temperatures in his cell.

II.

## The Motion for Summary Judgment

Defendants maintain that to the extent plaintiff's claims are based on actions that occurred in February of 2004, they are barred by the applicable statute of limitations. With respect to all of plaintiff's claims, defendants maintain that they are entitled to summary judgment because they were not deliberately indifferent to plaintiff's constitutional right to receive proper shelter while he was incarcerated.

III.

## Facts

A. Undisputed Facts

During February of 2004, December of 2005, and February of 2006, plaintiff complained to BCC officials that he was subjected to freezing cold temperatures in his cell. While incarcerated at the BCC, plaintiff was housed in the D-Pod cell area.

Thompson was an assistant warden at the BCC during 2004, 2005, and 2006. During this time period, Thompson oversaw the BCC maintenance department, which was responsible for maintaining and repairing the facilities and systems of the BCC. When Thompson received a maintenance complaint from an inmate, he referred it the appropriate department for a follow-up. Repairs were made through a work-order process whereby a problem was reported by employees or inmates to the maintenance department, and a work order was completed to dispatch the proper maintenance

personnel to repair the problem.

The BCC maintenance department was charged with the responsibility of ensuring that the BCC's heating and cooling systems were operating correctly and that temperatures were within the guidelines established by the American Correctional Association ("ACA"). The ACA guidelines required buildings to be kept at a comfortable temperature range; the BCC sought to maintain building temperatures between sixty-five and seventy-eight degrees Fahrenheit.

As part of the temperature-monitoring process, the maintenance department conducted weekly temperature checks, recording the temperatures of cells and of the dayroom, which apparently was a common area within each cell pod. Each pod of cells had two levels, so the temperature was checked on both the upper and lower levels. The records indicate that on December 2, 2005, the D-Pod dayroom was 73.5 degrees, the upper cells were 72.9 degrees, and the lower cells were seventy-two degrees. On December 9, 2005, the dayroom was 72 degrees, the upper cells were 68 degrees, and the lower cells were 68.2 degrees.

From December of 2005 to February of 2006, four work orders were sent to Thompson regarding the D-Pod heating system, but the only work order that Thompson could locate was issued on December 8, 2005. This work order states that the "heaters do not seem to be working." Defs.' App. at 14. In response to this problem, a technician reset the heating unit on December 8, 2005. Because of the way it was designed, the D-Pod heating unit would need to

be reset in order to produce heat when the outside temperature fell below thirty-nine degrees. Once reset, the heating unit would produce heat.

On December 28, 2005, Miles, who was a warden at the BCC during plaintiff's incarceration, responded to a grievance filed by plaintiff regarding the temperature in his cell. Miles advised plaintiff that the heaters had been repaired and were working properly.

BCC maintenance department records indicate that on February 10, 2006, the D-Pod dayroom was 72.5 degrees, the upper cells were 72.5 degrees, and the lower cells were 72.4 degrees. On February 17, 2006, the dayroom was 72.5 degrees, the upper cells were 73.2 degrees, and the lower cells were 73.4 degrees.

On February 21, 2006, Denney, a BCC captain, responded to a grievance filed by plaintiff. Plaintiff complained that Denney had failed to address his previous complaints relating to cell temperature. In response to this grievance, Denney stated that he had reported plaintiff's complaint to the maintenance department, which checked the D-Pod temperature and found it to be sixty-eight degrees.

On March 1, 2006, Miles responded to a grievance filed by plaintiff, wherein he complained about the temperature in his cell and expressed his desire for an investigation into the problem with the heaters. Miles advised plaintiff that his grievance had been investigated and that the maintenance department had checked the temperature and found no problems.

4

B.    Disputed Facts

Plaintiff alleges[1] that from December 5, 2005, to December 9, 2005, the temperature in his cell was "freezing cold," and his requests for relief were ignored. Compl. at 6. Plaintiff further alleges that from February 17, 2006, to February 19, 2006, the D-Pod heaters were not working properly despite maintenance department reports to the contrary, and temperatures in his cell had fallen into the teens. Plaintiff claims that BCC officials again failed to respond to his requests for relief.

For plaintiff to have been subjected to freezing temperatures within his cell, his entire cellblock would have had to have been subjected to the same freezing-cold conditions. Thompson, Harrelson, Denney, Powell, Collins, and Beck all claim that during the winter months of 2005 and 2006, they never observed freezing-cold conditions in the cell areas or saw that plaintiff or any other inmates were being subjected to such conditions. Similarly, Treat, who was assigned as the lieutenant on the night shift during 2005 and 2006, claims to have never observed freezing-cold temperatures inside plaintiff's cellblock or temperatures he considered uncomfortable.

---

[1] The allegations of the complaint are verified by plaintiff's declaration. Therefore, the court treats the allegations of fact as summary judgment evidence.

IV.

## Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. <u>Anderson</u>, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the nonmoving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 256. To meet this burden, the nonmovant must "identify specific evidence in the record and aticulate the 'precise manner' in which that evidence support[s] [its] claim[s]." <u>Forsyth v. Barr</u>, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. <u>Anderson</u>, 477 U.S. at 428. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. <u>Simmons v. Lyons</u>, 746 F.2d 265, 269 (5th Cir. 1984).

V.

Analysis

A.   Statute of Limitations

Federal law does not provide a statute of limitations for civil rights actions brought under 42 U.S.C. § 1983, so the court applies the forum state's general personal injury limitations period.  Gartrell v. Gaylor, 981 F.2d 254, 256 (5th Cir. 1993) (citing Owens v. Okure, 488 U.S. 235, 249-50 (1989)).  Under Texas law, the statute of limitations for a general personal injury action is two years.  Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 2002).  Defendants are entitled to summary judgment to the extent plaintiff's complaint is based on actions that allegedly occurred in February of 2004.  See Gartrell, 981 F.2d at 256; Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a).

B.   The Eighth Amendment

As discussed below, defendants are further entitled to summary judgment on all of plaintiff's claims because he has failed to adduce any evidence that any defendant showed deliberate indifference to his health or safety.  "[T]he Constitution does not mandate comfortable prisons."  Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  However, the Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide "humane conditions of confinement[,] . . . [ensuring] that inmates receive adequate food, clothing, shelter, and medical care . . . ."  Farmer v.

_Brennan_, 511 U.S. 825, 832 (1994).  See also _Palmer v. Johnson_, 193 F.3d 346, 351-52 (5th Cir. 1999).

Liability under the Eighth Amendment requires "'more than ordinary lack of due care for the prisoner's interests or safety.'"  _Farmer_, 511 U.S. at 835 (quoting _Whitley v. Albers_, 475 U.S. 312, 319 (1986)).  In a conditions-of-confinement case, an inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  _Palmer_, 193 F.3d at 352 (citing _Farmer_, 511 U.S. at 834).  First, the prison official's alleged act or omission must result in the denial of the minimal civilized measure of life's necessities.  _Palmer_, 193 F.3d at 352.  Second, the prison official must exhibit the requisite state of mental culpability, which is deliberate indifference to inmate health or safety.  _Id._  To establish deliberate indifference, an inmate must show that prison officials "(1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed."  _Id._  See also _Farmer_, 511 U.S. at 837 (holding "that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]").

The court must take the totality of the specific circumstances constituting confinement into account, "with particular regard for the manner in which some of those

conditions had a mutually enforcing effect." Palmer, 193 F.3d at 353 (citing Wilson v. Seiter, 501 U.S. 294, 304 (1991)). Even when prison officials actually know of an excessive risk to a prisoner's health or safety, they "may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844.

Under the Eighth Amendment, "[p]risoners have a right to protection from extreme cold." Palmer, 193 F.3d at 353. Plaintiff alleges that from December 5, 2005, through December 9, 2005, the temperature in his cell was "freezing cold." Compl. at 6. Just before this period, on December 2, 2005, the cell temperature in D-Pod ranged from 72 to 72.9 degrees. By December 9, 2005, that range had dropped by approximately four degrees, with temperatures ranging from 68 to 68.2 degrees. None of the defendants reported observing freezing temperatures from December 5, 2005, through December 9, 2005, and the summary judgment record does not contain complaints of freezing temperatures from any prisoners other than plaintiff. However, the summary judgment record indicates that the temperature could have dropped before rising again to sixty-eight degrees on December 9. A work order from December 8, 2005, states that the D-Pod heating unit stopped working and needed to be reset. Since cell temperatures presumably dropped in the meantime, the summary judgment record presents a genuine issue of material fact as to whether plaintiff was subjected to extremely cold temperatures at some point between December 5, 2005, and December 9, 2005.

Furthermore, the temperature may have dropped again in February as plaintiff alleges. Taylor notes that he received four work orders relating to the D-Pod heating unit during December of 2005 and February of 2006. Taylor's affidavit may explain why the D-Pod heating unit continually malfunctioned:

> A 're-set' of [the D-Pod] heating unit is necessary on occasion because the heating units at the BCC are heat pumps. If the outside temperature falls below 39 degrees, the heat pumps will not produce heat until they are 're-set' to the 'heat strip' mode. Once in the 'heat strip' mode, the heating units will produce heat. A 're-set' is done by moving the button at the control panel of the heating unit.

Defs.' App. at 9. Based on Taylor's affidavit, cell temperatures would presumably drop any time the outside temperature fell below thirty-nine degrees and the heaters were not reset.

Plaintiff alleges that from February 17, 2006, to February 19, 2006, the temperature in his cell had fallen into the teens. On February 17, 2006, the temperature in the D-Pod cells ranged from 73.2 degrees to 73.4 degrees. Though defendants claim they never observed any freezing temperatures in February of 2006, there is no direct evidence of what the temperature actually was inside the cells at any point after February 17, 2006. Additionally, the summary judgment record contains no evidence as to whether the outside temperature during this period dropped below thirty-nine degrees, which would have caused the heating unit to cease producing heat until it was reset. Interpreting the summary judgment record in the light most favorable to plaintiff, especially given that Taylor received at least one

work order relating to the heating unit in February of 2006, plaintiff has presented a genuine issue of material fact as to whether he was subjected to extremely cold temperatures in his cell from February 17, 2006, to February 19, 2006.

Plaintiff has failed, however, to adduce any evidence under the second prong of the Farmer test, deliberate indifference. See Farmer, 511 U.S. at 834; Palmer, 193 F.3d at 352. Under the deliberate indifference standard, plaintiff would have to show that defendants did not respond reasonably to the extreme cold he allegedly faced. See Farmer, 511 U.S. at 844. The four work orders generated during December of 2005, and February of 2006, evidence the defendants' reasonableness. Instead of showing plaintiff deliberate indifference, the defendants reasonably responded to his complaints, ordering that the temperature be checked and the heating unit be repaired. Denney ordered that the temperature be checked when plaintiff complained in February of 2006, and Miles advised plaintiff that the heaters had been repaired and were working properly on December 28, 2005, and again on March 1, 2006. Plaintiff has failed to adduce any evidence that defendants acted with deliberate indifference. Plaintiff has not even raised a fact issue with respect to defendants' reasonableness. Accordingly, defendants are entitled to summary judgment as to all of plaintiff's claims.

C.  Unserved Defendant

Summons for defendant David Brown ("Brown") was returned unexecuted, and Brown never entered an appearance in this case. Plaintiff makes the same allegations against Brown that he makes against the other defendants.  See Compl. at 5.  Normally the court would dismiss the action without prejudice with respect to Brown after notice to plaintiff.  See Fed. R. Civ. P. 4(m). However, given the court's disposition on the instant motion for summary judgment, the lack of service upon Brown is a moot point. Consistent with the holding with respect to the other defendants, the court dismisses this action with prejudice with respect to Brown.

D.  Plaintiff's Claims Against Geo Group, Inc.

Plaintiff has sued each defendant in that defendant's individual and official capacity.  Compl. at 7.  The BCC is operated by Geo Group, Inc. ("Geo"), a private entity.  Defs.' App. at 5.  Suit under § 1983 against the defendants in their official capacities is tantamount to suit against Geo.  See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 81 (2001) ("Under 42 U.S.C. § 1983, a state prisoner may sue a private prison for deprivation of constitutional rights[.]"); Monell v. New York Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . ."). See also Brandon v. Holt, 469 U.S. 464, 471-72 (1985).  Just as each defendant is entitled to summary judgment as to all of

plaintiff's claims in his or her individual capacity, and for the same reasons, Geo is entitled to summary judgment as to all of plaintiff's claims.

## VI.

## Order

For the reasons discussed above, the court concludes that the motion for summary judgment filed by defendants, Judith Brooks, Bobby Thompson, Priscella Miles, Bryan Powell, Roy Collins, Leonard Harrelson, Rickey Denney, Roger Treat, and Jerry Beck, should be granted.

The court ORDERS that all claims and causes of action asserted by plaintiff, DeJuan Andre Boulds, in the above-captioned action be, and are hereby, dismissed with prejudice.

SIGNED September 12, 2007.

JOHN McBRYDE
United States District Judge